```
                                                              1


                     UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION



                               - - -


UNITED STATES OF AMERICA,   . Case No. 1:15-CR-012
                            .
          Plaintiff,        .
                            .
       - v -                . Cincinnati, Ohio
                            . Tuesday, February 3, 2015
CHRISTOPHER LEE CORNELL,    . 9:00 A.M. Conference
                            .
          Defendant.        . In Chambers Conference
.............................

                    TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE SANDRA S. BECKWITH, SENIOR JUDGE

APPEARANCES:
For the Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
                       BY:  Timothy S. Mangan, Esq. (AUSA)
                       221 East Fourth Street
                       Suite 400
                       Cincinnati, Ohio  45202

                       UNITED STATES DEPARTMENT OF JUSTICE
                       BY:  Michael J. Dittoe, Esq.
                       National Security Division
                       950 Pennsylvania Avenue NW, Suite 1539
                       Washington, D.C.  20530

For the Defendant:     FEDERAL PUBLIC DEFENDER'S OFFICE
                       BY:  Karen Savir, Esq.
                       251 E. 5th Street, Suite 350
                       Cincinnati, Ohio  45202

Also Present:          Branden M. Forsgren (U.S. DOJ)

Law Clerk:             Laurie J. Nicholson, Esq.

Courtroom Clerk:       Mary C. Brown

Court Reporter:        Mary Ann Ranz
                       810 Potter Stewart U.S. Courthouse
                       100 East Fifth Street
                       Cincinnati, Ohio  45202
```

2

1 TUESDAY, FEBRUARY 3, 2015

2 <u>IN CHAMBERS CONFERENCE</u>   (9:05 A.M.)

3    THE COURT: Without stealing your thunder,
4 Mr. Mangan, perhaps we could let Mr. Forsgren introduce
5 himself and explain his part in all of this.
6    MR. FORSGREN: My name is Branden Forsgren. I'm a
7 Litigation Security Specialist with the United States
8 Department of Justice. I'm in the Justice Management
9 Division, which is separate from the U.S. Attorney's Office,
10 the National Security Division. Our subgroup is the Security
11 and Emergency Planning Staff, and there's nine people like me
12 that travel around the country and participate in these cases.
13 We are nominated and then appointed by the Court in a neutral
14 capacity, and my job is strictly to help all the parties
15 involved protect the classified information that may become
16 involved. So we get security clearances for all those people
17 that have the need to know. We provide all of the necessary
18 processing equipment for the classified information. It could
19 be safes. It could be a secure area to work in the
20 courthouse. We take care of all the security procedures. The
21 classified filings that may come into play, all that kind of
22 stuff, is handled through my office.
23    THE COURT: Okay.
24    MR. MANGAN: If that's my cue, Your Honor --
25    THE COURT: Yes, you're on.

1          MR. MANGAN: I'm on. All right.
2      Let me first introduce you to Mr. Dittoe. He's from the
3  Department of Justice and the National Security Division.
4      I think I spoke with Ms. Brown. I don't know if he needs
5  to be formally admitted, but at least for today or for
6  proceedings going forward, I'd like your permission to have
7  him participate, of course.
8      Really what I wanted to cover today, although we filed the
9  motion related to the classified materials, I thought if we
10 could just address the discovery process as it relates to both
11 unclassified and classified so that the Court has a better
12 understanding of at least our timeline and maybe then can talk
13 about the overall schedule related to the case, if that's
14 okay.
15     First things first. Defense counsel -- we've been
16 speaking with Ms. Savir about a protective order, and I think
17 we've reached an agreement. I need to finish the actual
18 wordsmithing and then send her the final draft, but my plan is
19 to do that as soon as we finish today. So we hope to have an
20 agreed protective order to submit to the Court today, if not
21 very shortly thereafter, that would address or apply to the
22 discovery overall. Once that's in place, the government has
23 an initial batch of discovery, I'll call it, some initial
24 discovery materials that are ready to go that don't require
25 any -- and let me clarify. What else I'll talk about will be

1   the unclassified side of this, and then when we get to
2   classified materials, Mr. Dittoe will jump in.
3           THE COURT: Okay.
4           MR. MANGAN: So we do have a batch of discovery
5   materials that are ready to go now.
6       Then what I'll call the second round of discovery that
7   still would be unclassified is really going to be the most --
8   most relevant and significant portion of it, and that relates
9   to the actual communications and meetings between the
10  defendant and the source that's mentioned in the indictment.
11  And to that end, there were a series of about six days of
12  meetings between the individuals, over really three different
13  visits. All those were recorded. In addition, there were
14  direct messages sent between them. So, one of the things that
15  we're working on is, we're working to obscure or pixelate the
16  source's image on those recordings. If there's a -- a number
17  of the recordings you have a redundancy where there might be
18  two different devices that were recording them, so even though
19  there might be one hour of a recording, we might have to do it
20  on two different recording devices. So the number of hours
21  taken to do that is going to require a little bit of time.
22      Here's what we expect to have in short order:
23      In about two to three weeks, we should have the written
24  version, all the written communications between them ready to
25  produce, as well as the written transcripts related to all

1  those meetings about two or three weeks after that.  So
2  roughly four -- four to five weeks from now, we should have
3  the audio/video ready to go in terms of the pixelation and any
4  of the other adjustments that need to be made.
5     And that second batch there with respect to those meetings
6  is really probably the biggest part of it and probably the
7  most significant aspect for Ms. Savir to review in terms of
8  understanding what the case is about.
9     Beyond that, there's the classified information, the
10 procedures we need to go through for that, so I'll turn it
11 over to Mike for that discussion.
12          MR. DITTOE:  Thank you, sir.
13    Good morning, Your Honor.  Good morning, everyone.
14    So as Your Honor knows from the pleading we set forth,
15 there's been -- there's a statutory mechanism to deal with
16 classified information.  And since this proceeding is not a
17 classified proceeding, we'll just have to talk in general
18 terms.
19          THE COURT:  Uh-huh.
20          MR. DITTOE:  And the first thing I was going to
21 mention, which is Mr. Branden Forsgren who is here.  And as he
22 mentioned, he is responsible for being the person -- the
23 depository of the classified information, and this is all set
24 up pursuant to the Classified Information Procedures Act.  And
25 then there're various rules that were issued still by

1 then-Chief Justice Burger, but those rules are still in effect
2 with regard to how those are handled, and those rules Your
3 Honor will see in CIPA.  And, of course, CIPA is at 18 U.S.C.
4 Appendix 3.
5 　　　And the rules related to the handling of the classified
6 information themselves are set out after Section 9.  So that
7 there's the statutory section that governs the security
8 procedures and then the implementing rules you will find set
9 out, and those are the implementing rules issued by then-Chief
10 Justice Burger and they remain in effect.
11 　　　In general, Your Honor, this case, we anticipate, will
12 involve some classified information.  We don't anticipate it's
13 going to involve a tremendous volume of classified
14 information.
15 　　　The majority of the proceedings that we will be conducting
16 will be a Section 4 proceeding in which we will essentially be
17 making a filing with the Court, requesting to make that filing
18 *ex parte* in camera, and we'll outline the legal basis for
19 that.  But there's clear precedent that provides that that
20 should be done *ex parte* in camera, and including the *Amwai*
21 decision from the Sixth Circuit which was decided in 2012.
22 　　　And in that we anticipate we will be seeking the Court's
23 authorization to delete certain matters from discovery as
24 being either not relevant to the case or not helpful to the
25 defendant, and that's essentially the standard.  So a fairly

1 straightforward standard which was originally set out by the
2 D.C. Circuit in *United States against Yunis* and has been
3 adopted by the Sixth Circuit, but most recently, of course, in
4 the *Amwai* decision.
5 And to facilitate that, we would recommend that defense
6 counsel at the same time submit to Your Honor *ex parte* in
7 camera what defense counsel's best judgment is in terms of the
8 defenses, and we find that procedure to be more efficient.  We
9 will certainly speculate a little bit as to what the possible
10 defenses are, but this way the Court would have in front of it
11 the defense counsel's theory of the case and this would be
12 based upon the unclassified discovery that had been produced.
13 And we would then be probably seeking deletion of the volume
14 of material from discovery.  And that is going to be the bulk
15 of the type of classified proceedings that we anticipate
16 occurring in this case.
17 It's possible, possible, there may be other proceedings.
18 But, you know, for example, obviously in this case, the
19 defendant does not have classified information himself, and
20 that's what Section 5 and Section 6 -- Section 5 in
21 particular, Your Honor, addresses that sort of issue, so
22 that's not really impacted here.  This is mostly a Section 4
23 proceeding, and we will -- and so we should discuss the timing
24 of that.
25 It's not an overwhelming volume, but it is a fair amount

1 of volume of material.  So, you know, when Mr. Mangren
2 [verbatim] and myself were talking, we were thinking that
3 maybe two months out from today, approximately two months,
4 would be perhaps a good time for the filing of the motion.
5 Defense counsel probably would have been able to review the
6 unclassified discovery by then, and we would urge that perhaps
7 the due date of the motions be the same for us filing the CIPA
8 4 motions and for defense counsel filing the theory of the
9 case, again *ex parte* in camera with Your Honor.  So that is
10 what we would propose to do and I think that would be a useful
11 procedure, Your Honor.
12            MR. MANGAN:  And then overall, to wrap it up, that
13 would be really, I think, by that point the final portion that
14 we would need to address.
15     I failed to mention there are some computers being
16 analyzed.  We hope to have the reports for those produced
17 within about four weeks as well.
18     In any event, when we get to -- I think what we're
19 proposing in terms of the CIPA filing would be around the
20 early April time frame, depending on how much time the Court
21 would need to do the analysis and issue an order.  Really, at
22 some point after that is when we'd be ready for trial.  So
23 we'd be talking -- whether late spring, early summer,
24 somewhere in that area.
25     I understand the Court has the order right now that we're

1  going to trial in March --

2         THE COURT:  Uh-huh.

3         MR. MANGAN:  -- but that is the timeline we were

4  hoping to lay out.

5         MR. DITTOE:  And, Your Honor, I also forgot to

6  mention one thing.  And in this case, we don't -- it's the

7  government's position that we don't see a need at this point

8  for defense counsel to have a clearance.  Ultimately, that, of

9  course, is Your Honor's decision as to whether defense counsel

10 needs to be cleared.  Some defense counsel don't want to go

11 through the process, others do.  But because this is going to

12 be based upon what we know now, we don't really see a need for

13 defense counsel to have a clearance.  But some of the -- some

14 of your staff probably will need to have a clearance and

15 that's why Mr. Forsgren is here.  I'm sure he's talked to you

16 before --

17        THE COURT:  Uh-huh.

18        MR. DITTOE:  -- in terms of who you would like to

19 clear and the timelines that would be necessary for obtaining

20 security clearances for members of your staff.

21        THE COURT:  Well, does someone have a standard order

22 appointing Mr. Forsgren as our Court Security Specialist?

23        MR. DITTOE:  Yes, we do, Your Honor, and we can get

24 that to you.  I don't physically have it here today with me,

25 but yes.

1    THE COURT:  I assume we should have that on --
2    MR. MANGAN:  Okay.
3    THE COURT:  -- just as a matter of housekeeping.
4    And I'll treat Mr. Forsgren as our Special Master in
5    charge of security, which, unless he tells me differently,
6    means I can call him, Ms. Savir can call him, Mr. Mangan can
7    call him, Ms. Nicholson, any of us could call him at any time
8    with a problem or a concern as to how to handle things.
9    MR. FORSGREN:  Absolutely.  Absolutely.
10    THE COURT:  Mr. Dittoe said he thought -- maybe I
11    misheard him -- four months to file the Section 4 --
12    MR. MANGAN:  Two months.
13    MR. DITTOE:  Two months, Your Honor.
14    THE COURT:  Okay.  So that's how we end up in April.
15    Well, that could be April the 3rd, which is a Friday; or
16    we could bump it over to the 6th, which is a Monday.
17    THE CLERK:  Did you say the 6th?
18    THE COURT:  Yes.  I know --
19    THE CLERK:  My only concern with starting trial on
20    the 6th is that's Opening Day.
21    THE COURT:  This is just the motion.
22    THE CLERK:  Oh, okay.
23    (Off-the-record discussion regarding scheduling dates.)
24    THE COURT:  4/10, close of business, 5:00 P.M.
25    Obviously, no responsive pleadings, because neither of you is

11

1  going to see what the other has filed.
2          MS. SAVIR:  Right.
3          THE COURT:  Should we establish a schedule for the
4  next step, or should we wait and see what I have to say about
5  all of this and then --
6          MR. MANGAN:  Yeah.  Given that you may not know how
7  much time you'll need --
8          THE COURT:  Uh-huh.
9          MR. MANGAN:  -- to go through that, we could set up
10 another date just to meet and then pick a trial date, unless
11 the Court wants to set a trial date right now.  I think we've
12 done it both ways.
13         THE COURT:  Seems to be an exercise in futility.
14         MS. SAVIR:  Right.
15         THE COURT:  Maybe we could have a telephone
16 conference the afternoon of the 27th.  It will be a little
17 over two weeks.
18    I don't know if you're gonna back up a dump truck to the
19 courthouse --
20    (Laughter.)
21         THE COURT:  -- or you're going to run it over in a
22 small envelope --
23         MR. MANGAN:  It's all on CDs now, Judge.
24         THE COURT:  -- no way of telling.
25         MR. MANGAN:  It's a dump truck contained in a CD.

1          MS. SAVIR:  Right.
2          THE COURT:  Just drop it and run.
3          MR. DITTOE:  More like a mid-size car:  Between a
4    dump truck and an envelope.
5          MR. MANGAN:  The 27th is fine, although I might be on
6    a plane that afternoon.
7       Could we do it in the morning by chance?  I don't know
8    what time my flight is.
9          THE COURT:  We could do it at nine in the morning.
10         THE CLERK:  I can move the 10 o'clock, if need be.
11         THE COURT:  Yeah.  We could slide that into the
12   afternoon.
13      What works best for you?  This is, I presume, going to be
14   just a phone conference so Mr. Dittoe doesn't have to be here
15   in person, or anything.
16         MR. MANGAN:  Yeah.  My preference would be for the
17   morning.
18         THE COURT:  Okay.  Nine --
19         MR. MANGAN:  That'd be fine.
20         THE COURT:  -- work?
21      It will be a telephone conference status/schedule.
22      In a perfect world, we would have a decision out for both
23   sides before then, but I would think at the very least I can
24   give you some idea of which way the wind is blowing.
25         MR. MANGAN:  Okay.  The only other thing I'd mention

13

1  is sometimes, you know, when we have a trial date, if either
2  side needs to issue any subpoenas, we can use that trial date
3  for subpoenas.  When we don't have a trial date, we tend to
4  have a little different situation, and I don't know if
5  Ms. Savir has the same issue from time to time.
6      Would it be permissible, if either side needed to issue a
7  subpoena for any reason between now and then, could we use the
8  27th as an acceptable date if we have to put dates on
9  subpoenas?
10         MS. SAVIR:  I agree.
11         MR. MANGAN:  Do you run into the same issue?
12         MS. SAVIR:  Yes, we do run into the same issue.
13         THE COURT:  Okay.
14         MR. MANGAN:  It would just be for purposes of us to
15 put a date on the subpoenas --
16         THE COURT:  Okay.
17         MR. MANGAN:  -- to move it along.
18      When we don't have a trial date, we don't have a date to
19 put on the subpoenas.
20         THE COURT:  Okay.  Maybe I'll show that in our order
21 as a tentative trial date.
22         THE LAW CLERK:  You could just put a hearing.
23         MS. SAVIR:  Hearing, yeah.
24         MR. MANGAN:  Yes, it can be for a hearing.  I just
25 want to have the Court's understanding --

14

1          THE COURT: Okay.

2          MR. MANGAN: -- and blessing that that was okay.

3          THE COURT: Anything else we ought to cover at this
4 point?

5          MR. DITTOE: I don't believe so, Your Honor, no.

6          MR. MANGAN: I think that's it.

7          MS. SAVIR: I just have a few comments.

8    As far as the Section 4 *ex parte* meetings, I assume that
9 those would be noticed on the docket, is that correct, so that
10 everyone would know that these meetings are taking place?

11          MR. DITTOE: Right. If there is a need for -- and
12 typically, oftentimes, there will be a need for an actual
13 *ex parte* meeting, as opposed to simply the submission of the
14 documents, and that could be noted. There shouldn't be any
15 objection to putting that fact on -- on the court docket,
16 that's correct.

17    So it would be "CIPA Section 4 Hearing Closed," and there
18 would be no issue with regard to just simply putting that fact
19 on the docket, that's correct.

20          MS. SAVIR: Okay.

21          MR. DITTOE: And, typically, you know, sometimes the
22 Court will have questions, you know, "You said this and this.
23 What about X, Y and Z?" Or, you know, "I don't quite
24 understand this." Or, you know, "Why are you saying this?"
25 I'm not certain I agree with you." And so actually an

15

1  in-person, you know, *ex parte* meeting both with defense
2  counsel and with the government, obviously separately,
3  sometimes is very helpful on this in order to answer any
4  questions the Court has.
5           THE COURT:  Is that something that should take place
6  at a SCIF or some other secure spot?
7           MR. FORSGREN:  If it's going to be over the Section 4
8  material that the government submits, yes, and I will need to
9  be here for that to help secure the --
10          THE COURT:  Okay.
11          MR. FORSGREN:  -- the room.  It will be taken care
12 of.
13          MS. SAVIR:  And so my request in that regard would be
14 for Your Honor to permit the defense to have *ex parte* meetings
15 with Your Honor as well, if the government is going to need
16 any *ex parte* meetings.
17          THE COURT:  Sure.
18          MR. DITTOE:  Yes.
19          THE COURT:  Fair's fair.  Yes?
20          MR. DITTOE:  No objection.
21          MR. MANGAN:  The only other thing I forgot to
22 mention, Your Honor, if there would be an Interest of Justice
23 order regarding the trial date --
24          THE COURT:  Oh, that's --
25          MR. MANGAN:  -- which we would request.

1       THE COURT: Okay. And is this a joint request?
2       MS. SAVIR: Your Honor, I have not discussed this
3  with my client, so this would be at government's request.
4       THE COURT: Okay. And the purpose of the waiver of
5  speedy trial is in the interest of justice. And if we want to
6  be more particular in order to --
7       MR. DITTOE: Forgive me for interrupting, Your Honor,
8  but because of the complexity of the case --
9       THE COURT: Uh-huh.
10      MR. DITTOE: -- and it would be under -- oh, the
11  little numbers. So it's 3161.(7)(B)(i) [verbatim], "where the
12  case is so unusual or so complex due to the number of
13  defendants" -- clearly not here -- "the nature of the
14  prosecution," and it would be the nature of the prosecution
15  and the fact that classified information is involved, and
16  that's typically done in cases involving CIPA. That would be
17  the basis for the Ends of Justice motion, or the Speedy Trial
18  Act, Your Honor.
19      THE COURT: Question about the transcript of today's
20  proceedings: Is there any reason that shouldn't be handled in
21  the ordinary course, and if anyone wants to order a copy,
22  since there was no discussion of any specific classified
23  information, just so they have an idea of what direction we're
24  going and how long it's going to take us to get there?
25      MR. MANGAN: We don't have any objection to that,

```
 1  Your Honor.
 2          THE COURT:  Okay.
 3          MS. SAVIR:  No objection, Your Honor.
 4          THE COURT:  Then we'll vacate the existing schedule
 5  and establish the deadline for the Section 4 motion and the
 6  defense counterpart and set up a telephone conference.  And
 7  between the receipt of the Section 4 and the defense
 8  counterpart, there may be some ex parte -- pardon me -- ex
 9  parte communications, and Mr. Forsgren will have to set us up
10  on that.  Okay?
11          MR. MANGAN:  Okay.
12          THE COURT:  Anything else?
13          MR. MANGAN:  No, Your Honor.  That's it.
14          MS. SAVIR:  No.
15          THE COURT:  Okay.  I guess, Mary, maybe put it on
16  your shoulders to notify Mr. Forsgren when we plan to get
17  together.
18          THE CLERK:  Uh-huh.
19          THE COURT:  Pardon me.
20          THE CLERK:  Mr. Dittoe, you don't have any contact
21  information on the pleading.
22          MR. DITTOE:  Okay.
23          THE CLERK:  Are you incognito?
24          MR. DITTOE:  No, no, no.
25     (Laughter.)
```

18

1       MR. DITTOE: I'm happy to give that to you now or,
2 you know, I'll get all the paperwork together to be formally
3 admitted. But you want it?
4       THE CLERK: Yeah, just in case to contact you.
5       MR. DITTOE: Sure. So the phone number is
6 202-307-3804.
7       THE CLERK: Okay.
8       MR. DITTOE: My e-mail address is:
9 michael.dittoe2@usdoj.gov.
10       THE CLERK: Okay. Thanks.
11       MR. DITTOE: And it's 950 Pennsylvania Avenue.
12       THE CLERK: Got that.
13       MR. DITTOE: Okay.
14       MR. MANGAN: If we don't need to do a separate pro
15 hac vice motion, we can do a notification and that would have
16 his contact information on it.
17       THE CLERK: That's fine.
18       MR. MANGAN: Okay. We'll have to get his ECF done.
19 We'll do that.
20       THE CLERK: Right.
21   Are you officially granting him permission to participate?
22       THE COURT: Yes.
23       THE CLERK: Okay.
24       THE COURT: We can incorporate that in our omnibus
25 order here. All involved, feel free to contact Mary Brown if

```
 1  you need any kind of conference or you have an issue, or
 2  contact Laurie.  I know some judges don't allow attorneys to
 3  contact their law clerks, but that's not the way we run things
 4  here.
 5          MS. SAVIR:  I will be having co-counsel on this case.
 6  Richard Smith-Monahan will be joining me.
 7          THE COURT:  Okay.  I guess we should formally add him
 8  as defense counsel on the docket, yes?
 9          MS. SAVIR:  Yes.
10          THE COURT:  Okay.  All right.  Well, good start.
11          MR. MANGAN:  All right.
12          THE CLERK:  Mr. Dittoe, here's my contact
13  information, should you need it.
14          MR. DITTOE:  Thank you very much.  Appreciate it.
15          THE COURT:  All right.  Thank you.
16          MR. MANGAN:  Thank you, Your Honor.    (9:27 A.M.)
17                            -  -  -
18                      CONFERENCE CONCLUDED
19                            -  -  -
20
21
22
23
24
25
```

C E R T I F I C A T E

    I, Mary Ann Ranz, the undersigned, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


s/Mary Ann Ranz
Official Court Reporter