UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

UNITED STATES OF AMERICA,    . Case No. 1:15-cr-012
                             .
        Plaintiff,        .
                             . *Motion Hearing*
   - v -               .
                             . Thursday, March 5, 2015
CHRISTOPHER LEE CORNELL,    . 8:32 PM
                             .
        Defendant.        . Cincinnati, Ohio
. . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SANDRA S. BECKWITH, SENIOR JUDGE

For the Plaintiff:    TIMOTHY S. MANGAN, ESQ.
                        Assistant U.S. Attorney
                        United States Attorney's Office
                        221 East Fourth Street, Suite 400
                        Cincinnati, Ohio  45202

For the Defendant:    RICHARD W. SMITH-MONAHAN, ESQ.
                        Federal Public Defender's Office
                        Suite 350 Chiquita Center
                        250 East Fifth Street
                        Cincinnati, Ohio  45202

For Fox 19-WXIX TV,   MICHAEL K. ALLEN, ESQ.
et al.:                Michael K. Allen & Associates
                        810 Sycamore Street, Fourth Floor
                        Cincinnati, Ohio  45202

Also present:        Deputy U.S. Marshal George Earls
                        Kevin Roach, News Director, Fox 19
                        Amy Wagner, Fox 19

Law Clerk:           Patrick F. Smith, Esq.

Courtroom Deputy:    Mary C. Brown

Court Reporter:     Luke T. Lavin, RDR, CRR

*Proceedings recorded by stenotype; transcript
prepared by computer-aided transcription.*

1            P R O C E E D I N G S

2        (In open court at 8:32 PM.)

3            THE COURT:  The courtroom deputy has not yet arrived,

4    but court is in session and we should proceed.

5        I do have a copy of Mr. Smith-Monahan's motion.  So since

6    we're here on your motion, Mr. Smith-Monahan, I'll turn the

7    floor over to you.

8            MR. SMITH-MONAHAN:  Yes, Your Honor.  Thank you.

9        We filed a motion this evening for an order to show cause

10   and listed three individuals or entities, requesting the Court

11   to require them to show cause as to why they should not be held

12   in contempt of this Court's order.  I'll give you a little bit

13   of background about the case and then discuss the specifics as

14   I know as to what has happened today.

15       This defendant -- Mr. Cornell -- obviously, I'm sure the

16   Court is aware, has gotten a lot of media coverage.  It's what

17   the government has identified as a terrorism charge.  Potential

18   penalties that go along with this case are substantial that he

19   is facing.  My office represents him in this regard.

20       Early on in this case --

21       And I am second.  I'm second chair type status in this

22   case.  Ms. Savir from our office is lead counsel on this

23   matter.  She is out of the country so is not available to deal

24   with this today, so I'm here in her stead.

25       -- at a bond hearing in this matter, Ms. Savir requested on

1    behalf of Mr. Cornell to the magistrate judge at that time that

2    no outside contact be permitted with Mr. Cornell, specifically

3    in relation to the media.  Because of the significant media

4    coverage that this case was getting and because, you know, in

5    this early court proceeding the courtroom was filled with

6    media, there was a concern that the media may try to reach

7    directly out to Mr. Cornell or have conversations with Mr.

8    Cornell about the case, our office thought it was important, in

9    order to protect his rights, that they not be permitted to have

10   access to him.

11       Ms. Savir made that request of Magistrate Judge Bowman on

12   January 16th, 2015.  Judge Bowman issued an order --

13       And pardon me for using my computer.  I didn't have printer

14   access tonight, so I'm relying on everything electronically.

15       But on January 16, 2015, Judge Bowman issued an order.  I'm

16   assuming the Court has had the opportunity to review that

17   order.  In that order Judge Bowman essentially ordered no

18   unauthorized outside contact with our client without express

19   permission of my office and, specifically, counsel for Mr.

20   Cornell.

21       In pertinent part that order reads:  "Having considered the

22   request" -- meaning our office's request -- "the Court hereby

23   grants the request and orders that no one be permitted to visit

24   or otherwise contact the defendant without the express approval

25   of Mr. Cornell's attorney."  So that was what Judge Bowman

1    ordered on January 16, 2015.

2        Now what we have learned has happened, we received -- Ms.

3    Savir, actually, received a voice mail message from a reporter

4    with WXIX Fox News.  Her name is Tricia Macke.  She is now

5    named in our motion for show cause.  At approximately 10:45

6    last night Ms. Savir received a voice mail message from Ms.

7    Macke I believe essentially requesting to interview our client.

8        As I indicated, Ms. Savir was out of the country and

9    happened to hear this voice mail.  She tried to contact me, but

10   it was late and I was actually indisposed at the time.  So this

11   morning when I received this information, I called the

12   cellphone number for Tricia Macke that was left on Ms. Savir's

13   voice mail.  I did that at approximately 8:00 AM this morning.

14       I called the cellphone for Tricia Macke.  It went to voice

15   mail after ringing several times.  I left a voice mail for Ms.

16   Macke, notifying her that we had received her request.  I

17   indicated that our office was not authorizing any interview of

18   Mr. Cornell.  I, of course, notified her that my office was

19   counsel for Mr. Cornell.  I reminded Ms. Macke that there was a

20   court order in place in this regard and that there was concern,

21   if they did interview Mr. Cornell, it would violate this

22   Court's order and again emphasized that we were not authorizing

23   any interview of our client.

24       Later in the morning I contacted the marshals service to

25   confirm that they were, obviously, aware of the court order and

1  that the Boone County Jail had been made aware of this court

2  order.   I spoke with two individuals with the marshals service

3  and was assured that the Boone County Jail had been notified of

4  this court order and that precautions were in place to make

5  sure that the media was not going to go and have access to our

6  client.

7       So I was contacted then -- I was reasonably assured at that

8  point this interview was not going to occur.   I was contacted

9  by Mr. Mangan, the United States Attorney, the Assistant United

10 States Attorney on this case.   That was approximately, I'm not

11 exactly sure, I want to say 5:45-ish Mr. Mangan and I talked.

12 He sent an e-mail to me.   I called him and spoke to him.

13      What Mr. Mangan notified me was that, I believe it's, the

14 FBI or one of his investigative agencies was contacted by WXIX

15 Fox News and notified that they had interviewed Mr. Cornell,

16 that that interview was going to be played, in whole or in

17 part, on Fox News, WXIX, tonight at 10:00 o'clock.   I believe

18 the news station inquired as to whether the federal

19 investigative agency wanted to make any comment in that regard,

20 and I do not believe they did.   That investigator, whomever it

21 was, notified Mr. Mangan of that situation, and Mr. Mangan

22 contacted me to let me know about that.

23      After consultation within our office, I called the phone

24 number I had for, I believe, Tricia Macke.   At that point I was

25 connected with -- and the individual's here.

1        And I'm sorry.  Kevin Roach?

2             MR. ROACH:  Yes.

3             MR. SMITH-MONAHAN:  Who is news director --

4             MR. ROACH:  Right.

5             MR. SMITH-MONAHAN:  -- at WXIX.  I informed him of the

6    Court's order.  I notified him that we were objecting to the

7    station playing that report and that we believed that interview

8    had been obtained in violation of the court order.

9        Mr. Roach referred me to their legal counsel, who is in

10   Washington, D.C., a gentleman by the name of Jeff Kosseff,

11   K-o-s-s-e-f-f.  Mr. Roach, in brief, notified me that a

12   consultation had already been had with Mr. Kosseff regarding

13   the Court's order before my phone call and that they were, as I

14   understood it, intending to proceed with the news broadcast.

15       I notified him that we may potentially be filing a motion

16   for an order to show cause and/or a motion for a temporary

17   restraining order to prevent them from playing the interview,

18   as we felt it was in violation of the Court's order.  I then

19   attempted to contact Mr. Kosseff at, first, an office number,

20   and then I was subsequently given a cellphone number.  I was

21   unable to reach him at that time.  And I think the Court is

22   then aware of my attempts to contact the courtroom deputy in

23   order to get a hearing this evening, which we've achieved.

24       I did later hear from Mr. Kosseff in close proximity to the

25   time of this hearing.  I notified him of the hearing at 8:15,

1    and I believe the station has since contacted Mr. Mike Allen, a

2    local attorney, who is present on behalf of the station.

3        So those are the facts as I understand them this evening.

4    I'm a little unclear on some details.  I don't know when this

5    interview of my client actually occurred.  I have inquired but

6    have not received an answer to that question.  I believe that

7    interview was by telephone, is what I have been told, of my

8    client, my client at the jail and this news reporter on some

9    telephone.

10       I can say, in sum, the reporter appears to at least have

11   been aware of the order because they contacted Ms. Savir to

12   request permission.  No express permission was given, and to

13   the contrary, at 8:00 AM this morning I specifically notified

14   this reporter in a voice mail that we were not authorizing this

15   interview and reminded her of the existence of the order.

16       So we have done everything we reasonably could in our

17   office to try to prevent this interview from happening.  I

18   don't know when it occurred.  Again, I would be interested to

19   find out that information:  when this interview occurred.  But

20   given the contents of the Court's order and given the actions

21   taken by WXIX Fox News in regard to this matter, we ask that

22   the Court order the station, Fox News, and Tricia Macke to

23   appear to show cause why they have not violated or should be

24   held in contempt of this Court's order.

25       And also, as an alternative, we would ask the Court to

1    issue a temporary injunction or restraining order prohibiting

2    this story from being played on the 10:00 o'clock news tonight

3    because it is in violation of a direct order of -- because the

4    information that would be played in that report was obtained in

5    direct violation of an order of this Court.

6        I will also comment, obviously, our interest in this matter

7    is Mr. Cornell and his constitutional rights related to this

8    case.  Mr. Mangan informed me that the news station informed

9    him that Mr. Cornell, quote, gave a confession of some sort in

10   this interview.  So that is why, from our office's perspective,

11   this is such an important matter.

12       Given the seriousness of the charges this individual is

13   facing -- he's a very young man.  I'm estimating he's 19, 20

14   years old and has been pursued, he and his family have been

15   pursued by the media since the onset of this case.  We're

16   concerned about the circumstances.  Obviously we're concerned

17   about his Fifth Amendment rights, protecting his right to a

18   fair trial.  And given the violation of this Court's order, we

19   ask the Court to intervene at this point to prohibit this

20   information from becoming public and falling into the hands of

21   an individual who can be subpoenaed to testify before this

22   Court at this trial.

23       So given all of these circumstances, we ask the Court to

24   impose some or all of the remedies we've requested this evening

25   and in our motion.  I was considering the possibility that the

 1   Boone County Jail should not be included in this motion.   I

 2   don't know if the jail facilitated this phone call or not or if

 3   they had any knowledge of this phone call.   I do believe he is

 4   permitted to make phone calls from the jail just as a part of

 5   being an inmate there.   So I have no actual knowledge that the

 6   jail facilitated this phone call.   If they, in fact, did not,

 7   we would be inclined to orally move to remove them from the

 8   show cause motion.

 9          THE COURT:   Before we proceed further, I note that the

10   member of the marshals service here who handles detention and

11   jail liaison has some knowledge of this matter.   And if need

12   be, we could reach the lieutenant at the Boone County Jail who

13   was in charge, apparently, at the time this event occurred.

14   But perhaps it would be best if Marshal Earls would come

15   forward.

16      And in order to appropriately do the formalities, Ms.

17   Brown, if you would swear the marshal.

18          COURTROOM DEPUTY:   Please raise your right hand.

19      (George G. Earls is duly sworn by the courtroom deputy.)

20          COURTROOM DEPUTY:   Thank you.   Please be seated.

21                        GEORGE G. EARLS

22   a witness herein, having been previously sworn, testified as

23   follows:

24                          EXAMINATION

25

BY THE COURT:

Q.  For the record, would you state your name and your

assignment.

A.  George G. Earls, supervisor with the U.S. Marshals Service,

Cincinnati.

Q.  In connection with your official duties, have you had

occasion to be in contact with someone in authority at the

Boone County Jail in connection with Christopher Cornell, a

defendant in this matter?

A.  Yes.

Q.  Can you describe your communications with him.

A.  His name is Lieutenant Jason Maydak.  He is the authority

in command of Boone County Jail.  I received a call -- or I

called him earlier tonight in reference this incident.  He

relayed to me that he received a call from Fox 19 News

asking --

        MR. ALLEN:  Just for the record, I'll object as being

hearsay, but I understand it's an extraordinary proceeding.

        THE COURT:  For the purpose of this hearing, I'm going

to permit it.  If we reach the point where we're having a

temporary restraining order or an injunction --

        MR. ALLEN:  Yes, ma'am.

        THE COURT:  -- hearing, formalities will be observed.

        MR. ALLEN:  Thank you.

Q.  Please proceed.

1    A.  He received a phone call from a reporter from Fox 19 News

2    requesting, asking if they would permit an interview with Mr.

3    Cornell.  He stated that he did not -- he would not, that the

4    Court order was in place and that they would have to contact

5    the marshals and the attorney to have access.

6        A few hours later he received another phone call from the

7    reporter asking if they would relay to Mr. Cornell a phone

8    number, and which he agreed.  He relayed the phone number to

9    Mr. Cornell, and then Mr. Cornell made a phone call to the

10   reporter.

11            THE COURT:  Questions?

12       Mr. Smith-Monahan, would you like to ask anything of the

13   marshal at this point?

14                          EXAMINATION

15   BY MR. SMITH-MONAHAN:

16   Q.  I don't know if this was answered but, Officer Earls, do

17   you know when those phone -- were you advised as to when either

18   of those phone calls from the reporter occurred?

19   A.  No, he didn't state exactly the time.

20   Q.  Pardon?

21   A.  He didn't state a time, exact time, for the reporter.

22   Q.  Did you know if it was today or yesterday?

23   A.  I couldn't state exactly when.

24            MR. SMITH-MONAHAN:  I don't think I have any further

25   questions, Judge.

```
 1              THE COURT:  Mr. Mangan?

 2              MR. MANGAN:  Just very briefly.

 3                          EXAMINATION

 4  BY MR. MANGAN:

 5  Q.  Mr. Earls, in general can a person from the outside call

 6  the jail and initiate a phone call with an inmate?

 7  A.  No.

 8  Q.  Is it the inmate that has to initiate it with the jail

 9  authorities to make a call?

10  A.  Yes.

11              MR. MANGAN:  Thank you.

12              THE COURT:  Deputy, perhaps you could explain the

13  arrangement at the Boone County Jail in connection with Mr.

14  Cornell's detention, in particular with regard to his access to

15  a telephone.

16              THE WITNESS:  He has access from -- I confirmed with

17  Lieutenant Maydak -- from 7:00 AM to 12:00 PM, full access.  He

18  can make as many phone calls as he wants.

19              THE COURT:  Okay.

20     Mr. Allen?

21              MR. ALLEN:  Just a couple, Judge, and I think they'll

22  be similar to Mr. Mangan's questions.

23                          EXAMINATION

24  BY MR. ALLEN:

25  Q.  Mr. Earls, again, was your testimony that it's your belief
```

1  that you were told that Mr. Cornell made the phone call to the

2  reporter?  Correct?

3  A.  Yes.

4  Q.  Okay.  And to the best of your knowledge, no on-camera

5  interview took place between Mr. Cornell and any member of the

6  Fox 19 News team?

7  A.  No.

8       MR. ALLEN:  Thank you.

9       MR. SMITH-MONAHAN:  May I follow up briefly, Judge?

10       THE COURT:  Mr. Smith-Monahan.

11                         EXAMINATION

12  BY MR. SMITH-MONAHAN:

13  Q.  Is it your understanding whether there's any jail policy as

14  to whether outside individuals can call the jail and request an

15  inmate to call them?

16  A.  I'd have to check with Lieutenant Maydak.  What he relayed

17  to me was that's exactly what happened on this incident, that

18  they contacted him, asked if they would relay a message or a

19  phone number to Mr. Cornell, and that's what he did.

20  Q.  And this reporter that called, it was your understanding

21  from that phone call that that reporter identified themself to

22  the jail as a reporter?

23  A.  Yes.

24  Q.  So based on what the reporter told the jail, the jail would

25  have been informed this is a reporter trying to have contact

1  with Mr. Cornell?

2  A.  Yes.

3  Q.  And the jail facilitated providing that reporter's phone

4  number to Mr. Cornell under those circumstances?

5  A.  According to what Lieutenant Maydak has told me, yes.

6  Q.  And do you know what the jail official communicated to Mr.

7  Cornell when providing him that phone number?

8  A.  No.  He just -- Lieutenant Maydak just told me that they

9  gave him the number.  That's all he told me.  I didn't ask him

10  anything further about it.

11  Q.  Did they give you the name of the reporter that made the

12  phone call to the jail?

13  A.  I can't recall what her name was.  I'd have to call back

14  and ask them.

15  Q.  If you heard a reporter's name, would that perhaps --

16  A.  Yeah.

17  Q.  -- help you to remember?  Was it a Tricia Macke?

18  A.  Yes.

19          MR. SMITH-MONAHAN:  Okay.

20  I don't have any other questions, Your Honor.

21          THE COURT:  All right.

22  Thank you.  You can step down.

23          MR. ALLEN:  Judge, may I ask one, just as a follow-up?

24          THE COURT:  Oh.  Go ahead.

25                              EXAMINATION

1  BY MR. ALLEN:

2  Q.  Do you know -- and you may very well not know, but based on

3  your conversations with Lieutenant Maydak, do you know if this

4  reporter knew anything about this order that was put on by

5  Magistrate Bowman?

6  A.  No, I don't.

7          MR. ALLEN:  Thank you.

8          MR. SMITH-MONAHAN:  I have no further questions,

9  Judge.

10          THE COURT:  All right.

11    Thank you, Deputy.

12    (Witness excused.)

13          THE COURT:  Well, folks, I have to share with you that

14  I saw the 6:00 o'clock, I guess, Channel 19 News where Ms.

15  Macke announced that she would be playing this or parts of this

16  interview, and during which time she played not once but twice

17  a short snippet of the interview with what purported to be Mr.

18  Cornell's voice talking about what he had wanted to do.  And

19  while I can't give you verbatim, the upshot was he would like

20  to shoot the President in the head, after which he would

21  attempt to kill as many members of Congress as possible.

22    Under those circumstances, I'm not entirely sure what's

23  left to try to put back in Pandora's box.  I simply pose the

24  question.

25          MR. SMITH-MONAHAN:  That's a good point.  I did not

1  hear that broadcast.  I was informed, roughly, that the snippet

2  did occur.

3      Certainly if this case goes to trial, based on whatever the

4  Court's determinations are as to whether the news station and

5  this reporter have violated a Court order, we would be asking

6  the Court to exclude that information so the jury did not hear

7  it at trial.  I think, for purposes of our case, that could

8  resolve that aspect of it.

9      Again, our interest is merely to protect our client's trial

10  rights.  Whether the news station should be sanctioned for

11  their conduct is a matter the Court can determine separately

12  and independently.  Our focus is to protect our client's

13  rights.

14      Obviously, the more news that is played at this point about

15  this confession, the more likely that potential jurors could

16  hear it, which has the potential of tainting any possibility of

17  a fair trial in this jurisdiction, depending on how many

18  individuals listen to a news report at 10:00 o'clock tonight.

19  And that may be an issue we visit, we revisit at the time of

20  trial based on the snippets that were played already, but I

21  think the potential is here for significant damage if that

22  entire interview is played and depending on how much of the

23  general public watches it at 10:00 o'clock tonight.

24          THE COURT:  Okay.

25          MR. SMITH-MONAHAN:  So we would submit the issue

1    obviously is important and the Court should act.

2         Given what I've heard in the testimony from Officer Earls a

3    few moments ago, I think we do need to continue to proceed with

4    the Boone County Jail as a party to this, as a named -- "party"

5    is not the right word, but being named in our motion as being

6    required to show cause, because it does appear that the Boone

7    County Jail was notified this was a reporter attempting to

8    reach our client, and they did facilitate that happening.

9         So given the evidence you've heard, given our argument, we

10   ask the Court to issue an order requiring Tricia Macke, WXIX

11   Fox News; WXIX Fox News as an entity, and the Boone County Jail

12   to appear and show cause why they should not be held in

13   contempt of this Court's order.

14        And we would ask the Court to issue a temporary injunction

15   restraining order prohibiting Fox News from doing further

16   damage by playing this interview at 10:00 o'clock.

17             THE COURT:  Okay.

18        Mr. Allen?

19             MR. ALLEN:  Yes, ma'am.

20        Judge, I just want to tell you that -- I'm not using this

21   for an excuse -- I'm about an hour into this case as we speak.

22   But I understand the concepts, I think I understand the law,

23   and am prepared to argue here.  I just wanted the Court to know

24   that.

25        Judge, I think the Court knows about prior restraints and

1    how important it is not to have prior restraints of the media.

2    In every case that I can remember -- and I'm not going to tell

3    the Court that I'm an expert in this area, because I'm not.

4    But in almost every case that I have seen, prior restraints are

5    almost always stricken down, ultimately, of course, by the

6    United States Supreme Court.  One case that comes to mind is

7    *Nebraska Press Association versus Stuart*.  I think in that case

8    it was held to be unconstitutional, the prior restraint.

9        Judge, it's very clear that Fox 19 is not a part of this

10   order, and I'm not trying to be flippant in saying that.  No

11   media outlet is a part of this order.  Certainly Fox 19 is not.

12   And it's not to demean the gravity of this and the seriousness

13   of what was said.

14       And as a criminal defense lawyer, I certainly understand

15   what Mr. Smith-Monahan is saying, and if it were my client, I'd

16   be up here fighting for them too.  However, the client

17   ultimately made the decision to give this telephonic interview.

18       I think there should be no contempt of Ms. Macke or Fox 19,

19   as they were not subject of this order, in my humble opinion,

20   having been involved in this case for just a short period of

21   time.  And there should be no restraining order against them,

22   because it is a prior restraint or would be a prior restraint

23   of the news media at this point.

24       And I certainly agree with Mr. Smith-Monahan that, if

25   anyone messed up here, it would be the Boone County Sheriff's

1  Office -- and I don't mean to demean them -- that they should

2  be a part of this order and this motion.  And they had to draft

3  it quickly.  I was fortunate enough to be able to look at it on

4  the computer before it was printed out for me.

5      The other thing, Judge, honestly -- I just was thinking

6  about this as we were sitting here.  And again, not to demean

7  the seriousness of this.  I understand that that was put out

8  and the Court heard it at 6:00 o'clock or 6:30.  And, you know,

9  if more were put out, more would be known by the public.  But

10  as this Court well knows from the many, many, many jury trials

11  that it has had at the state and federal level, that there is a

12  thing called a *voir dire* process, and during that *voir dire*

13  process a juror can raise his or her right hand and swear that,

14  whatever they heard in the media, they can disregard and render

15  a fair and impartial verdict based upon what they hear from the

16  witness stand and the law that's given to them by the judge.

17      So that could be a possible remedy.  Again, having been in

18  this for just a very short period of time, I don't think that

19  the federal public defender's office has shown sufficient cause

20  to hold any of those parties in contempt or to require the

21  Court to restrain them from broadcasting anything further from

22  that interview.

23      Thank you.

24          THE COURT:  Well, Mr. Allen, let me ask you this.

25          MR. ALLEN:  Yes, ma'am.

1        THE COURT:  You say WXIX should not be included, but I

2   assume that they have the tape, they have the ability and

3   intention of playing it tonight as a part of the 10:00 o'clock

4   news.

5        MR. ALLEN:  They want to, Judge.  Yes, ma'am.

6        THE COURT:  And if Ms. Macke were sitting in jail

7   tonight, it would probably run anyway, unless I restrained them

8   as well as --

9        MR. ALLEN:  Yes, ma'am.

10       THE COURT:  -- the jail.

11       MR. ALLEN:  That's what I was going to say.  If you

12  say not to play it, I don't think they're going to play it.

13       THE COURT:  Do you have the authority to assure the

14  Court that they will not play it until we've had a hearing?

15       MR. ALLEN:  If Your Honor would permit me just a few

16  minutes to talk to the news director, I could give you an

17  answer to that.

18       THE COURT:  Okay.

19       MR. ALLEN:  Thank you.

20       THE COURT:  Do you need a brief recess?

21       MR. ALLEN:  Yes, ma'am, if I may.  Just a few minutes.

22       THE COURT:  All right.  We'll take a brief recess.

23       MR. ALLEN:  Thank you.

24       COURTROOM DEPUTY:  All rise.  This court is now in

25  recess.

1    (Recess taken:  9:00 PM - 9:12 PM.)

2         THE COURT:  Mr. Allen, what do you have to say?

3         MR. ALLEN:  Your Honor, I just had a little bit of

4    factual clarification.  If the Court would just indulge me.

5    Just four major points I want to clarify for the record, that I

6    just learned.

7         Your Honor, Mr. Cornell, as I understand it, is the one

8    that called Fox 19 last night at 10:00 PM.  Obviously, it

9    wasn't the other way around.  He actually called them back.

10   He -- Mr. Cornell -- called Fox 19 back two times after the

11   initial call.

12        The only action, Judge -- and I think you know this from

13   the testimony that took place -- that Fox 19 took was to give

14   their phone number to the jail to give to Mr. Cornell.

15        And the only other thing, Judge -- and I'm not going to

16   beat this horse because I know the Court knows the law -- but

17   this is a matter of great public concern, Your Honor.  And

18   courts must be very careful to impose any type of prior

19   restraint upon a media outlet.  And I know the Court knows

20   that, and I think the overwhelming majority of the reported

21   cases back that up.

22        Judge, getting to the gist of what your question was, I did

23   talk to the representatives of Fox 19 and, obviously, if the

24   Court orders that they not broadcast the story tonight, they

25   will not do so.  And I think that's what the Court was looking

 1   for, the answer to the question, if I'm not mistaken.

 2            THE COURT:  Well, Mr. Allen --

 3            MR. ALLEN:  Yes, ma'am.

 4            THE COURT:  -- my question is really are they willing,

 5   for lack of a better term, as a gesture of good faith to

 6   withhold airing this tape until there can be a hearing on the

 7   subject of contempt.  If not, if they are unwilling to

 8   voluntarily do that, then I'll just have to take the action

 9   that I feel is appropriate and constitutional in the situation.

10            MR. ALLEN:  Okay.  I understand, Judge.  This time

11   just give me 30 seconds.

12       (Mr. Allen and Mr. Roach confer privately.)

13            MR. ALLEN:  Judge, again, I spoke with the appropriate

14   representative of Fox 19, and they said that they will not air

15   it right now, subject to relitigating the issue at an

16   appropriate time.

17            THE COURT:  Okay.  I've wandered off without my

18   iPhone, but Ms. Brown has the schedule.

19       When might we convene a hearing on, the full proper hearing

20   on Mr. Smith-Monahan's motion for an order to show cause?  We

21   would need to have Ms. Macke present.  We would need to have

22   the lieutenant from Boone County Jail.

23       Mr. Mangan, advise me.  Boone County, Kentucky, we can

24   still issue a subpoena, or do we -- can we reasonably expect

25   that he would appear voluntarily?

1          MR. MANGAN:  I believe we can issue a subpoena, Your

2     Honor.

3          THE COURT:  Okay.

4          MR. ALLEN:  Judge, for what it's worth, Mr. Roach, the

5     news director from Fox 19, would understandably prefer that

6     hearing to be sooner rather than later.  And I understand the

7     Court's docket as well.

8          THE COURT:  9:00 AM tomorrow morning I can do it, as

9     long as we can get the subpoenas served.

10         MR. ALLEN:  That works for us, Judge.

11         THE COURT:  Okay.  Mr. Mangan and Mr. Smith-Monahan,

12    how are you for that?

13         MR. SMITH-MONAHAN:  Judge, I have a 9:30 tomorrow

14    morning before Judge Barrett, and I am otherwise free.

15         THE COURT:  How long is your hearing with Judge

16    Barrett likely to take?

17         MR. SMITH-MONAHAN:  It's a plea hearing, so 30

18    minutes-ish.

19         THE COURT:  Does 10:00 o'clock work for everybody

20    tomorrow?

21         MR. ALLEN:  Yes, ma'am, that would work for Fox 19.

22         MR. MANGAN:  If not me, Your Honor, we'll make sure

23    someone's here, obviously.

24       In terms of the individual at the jail, it's your request

25    that we issue a subpoena to the jailer to be here tomorrow at

```
 1   10:00.  Is that --

 2            THE COURT:  Yes.  Unless the deputy feels that he

 3   could call him and have him appear voluntarily.

 4            U.S. DEPUTY MARSHAL EARLS:  I can give him a call to

 5   see.

 6            THE COURT:  Then the other question is:  shall we have

 7   Mr. Cornell present.  It seems if he has a different version of

 8   what transpired, you may want him to speak.

 9       Mr. Smith-Monahan, he's your client.

10            MR. SMITH-MONAHAN:  I believe it would be prudent to

11   have the defendant here, Your Honor, given the fact that it's

12   his substantial rights.

13            THE COURT:  Okay.

14       Can we do that, Deputy?

15            U.S. DEPUTY MARSHAL EARLS:  Yes, Your Honor.

16            THE COURT:  All right.  10:00 o'clock tomorrow

17   morning, hearing on the motion for order to show cause.  And we

18   have an agreement from Fox News that the taped interview

19   between the defendant, Mr. Cornell, and reporter, Ms. Macke,

20   will not be aired until at least after that hearing.

21            MR. ALLEN:  I understand that, Judge.

22            THE COURT:  Okay.

23            MR. ALLEN:  Just --

24       I'm sorry.  Go ahead.

25            MR. SMITH-MONAHAN:  Go ahead.
```

1        MR. ALLEN:  One thing that we just want some

2   clarification on.  I think I know the answer to this, Judge.

3   There is nothing that would prohibit, no order from the Court

4   that would prohibit Fox 19 reporting that this hearing took

5   place tonight?  Again, without airing anything with respect to

6   the interview.

7        THE COURT:  Absolutely.  This is an open hearing.

8        MR. ALLEN:  Okay.

9        THE COURT:  You can get a transcript --

10       MR. ALLEN:  I understand.

11       THE COURT:  -- from Mr. Lavin.  And unless something

12   remarkable happens between now and 10:00 o'clock tomorrow, I

13   expect that hearing will probably be open as well.

14       MR. SMITH-MONAHAN:  I understand, Judge.

15       THE COURT:  I'm not hearing any requests to the

16   contrary.

17       MR. SMITH-MONAHAN:  No requests, Your Honor, in that

18   regard.

19    I do have two issues to address to you at the appropriate

20   time.

21       THE COURT:  Yes.  Please.

22       MR. SMITH-MONAHAN:  I assume this would not happen,

23   but in an abundance of caution, and focusing on our interest in

24   this matter, I would request that Fox 19 make a similar

25   indication to the Court that that tape is secure containing my

1   client's interview and it would not be divulged to any other

2   party who could disclose it.

3       At this point it may be subject to an order of this Court

4   that prohibits it from ever being released.  So I just want to

5   make sure it is secure until the time of our hearing tomorrow.

6           MR. ALLEN:  Judge, I've just been assured by Mr.

7   Roach, the news director, that there will be no problem with

8   that.

9           THE COURT:  Very good.  Thank you so much.  I

10  appreciate everyone's --

11      Yes, Mr. Smith-Monahan.

12          MR. SMITH-MONAHAN:  I have one other issue.  I'm

13  sorry.

14      I've actually been notified by Ms. Savir by e-mail during

15  the course of this hearing that she has now received an e-mail

16  from WCPO, another news outlet in town, who apparently saw this

17  6:00 o'clock snippet.  They are now requesting to interview our

18  client given that they believe that access has been allowed to

19  WXIX.

20      I've addressed this to the marshal, and to the extent the

21  Court can assist, I am asking everything within our power to

22  ensure that that Boone County Jail does not facilitate another

23  reporter being able to get information to my client to try to

24  communicate with him.

25          THE COURT:  Well, let's get a little clarification on

1    the record.

2        Marshal, as I understand it, defense counsel asked that Mr.

3    Cornell have the ability to make phone calls out of the jail.

4            U.S. DEPUTY MARSHAL EARLS:  (Nods head up and down.)

5            THE COURT:  As long as he seems to want to engage in

6    behaviors that are, for lack of a better term, self-

7    destructive, I'm not sure what the solution is.

8        Mr. Smith-Monahan, I'm happy to entertain whatever thoughts

9    you have in that regard.

10           MR. SMITH-MONAHAN:  As I understand the facts, this

11   was instigated by a reporter from Fox 19 News calling the jail

12   and requesting that the jail notify my client that they wished

13   to talk to him and asking that the jail pass a phone number to

14   him.  Apparently that was done.  Otherwise I don't believe my

15   client would have had any idea how to call this reporter.

16       We simply ask, given the order of the Court at this point,

17   that someone be instructed, to ensure that does not happen

18   again, that the jail is not facilitating reporters reaching out

19   to our very young client to try to encourage him to speak with

20   the media.

21           THE COURT:  Okay.

22       Marshal, can we do that with the Boone County Jail?

23           U.S. DEPUTY MARSHAL EARLS:  I'll do it right after

24   this hearing, Judge.

25           THE COURT:  Okay.  I presume that you would prefer

1   that your client not receive notes with phone numbers of anyone

2   of any kind without that person's contact information having

3   been cleared with defense counsel.  Is that a fair statement?

4       I assume some man on the street could call the jail and

5   say, "Would you mind giving my phone number to Mr. Cornell and

6   ask him to call me."

7               MR. SMITH-MONAHAN:  The reason -- I will tell you that

8   we've tried -- we've tried to get the jail to ask clients to

9   call us at our office, and that request has been denied.  I was

10  shocked to hear that a reporter was able to do this.

11      We've had difficulty reaching our own clients in that

12  fashion.  So I believe the jail had a -- and I don't know about

13  the Boone County Jail, but I know the Butler County Jail won't

14  do that.

15              THE COURT:  Okay.

16              MR. SMITH-MONAHAN:  So I would expect they would

17  already have that policy.  But there shouldn't be anyone -- my

18  client's family knows how to reach him.  And other than my

19  client's family and our office, from our view, there shouldn't

20  be anyone else needing to contact him.

21              THE COURT:  Okay.

22              MR. SMITH-MONAHAN:  I think the jail keeps record of

23  who's on the defendant's call list.  I think they have to

24  notify the jail of individuals they may call.  So he should

25  have a call list at the jail of people that he's authorized to

1    talk to on the phone.  So I would just expect there wouldn't be
2    anyone else, other than the authorized call list, putting in
3    requests for him to call.
4        THE COURT:  Okay.  Well, the short version is that the
5    jail is not to pass on contact information, telephone or
6    otherwise, to Mr. Cornell from media outlets.
7        Is that fair enough, or are you asking for something more
8    broad?
9        MR. SMITH-MONAHAN:  That's fair enough, Your Honor.
10       THE COURT:  Okay.
11       MR. SMITH-MONAHAN:  Till tomorrow, and then we can
12   address the issue.
13       THE COURT:  Yes, until tomorrow.
14       Anything else, counselors?
15       MR. ALLEN:  No, ma'am.
16       MR. SMITH-MONAHAN:  Nothing further, Your Honor.  And
17   we very much appreciate your time this evening.
18       THE COURT:  Well, thank you for dropping everything
19   and coming in, and we'll sort it out tomorrow.
20       MR. ALLEN:  Thank you, Your Honor.
21       MR. SMITH-MONAHAN:  Thank you, Your Honor.
22       MR. MANGAN:  Thank you, Your Honor.
23       COURTROOM DEPUTY:  All rise.  This court is now
24   adjourned.
25       (At 9:24 PM the hearing was recessed, to be continued on

1   Friday, March 6, 2015, at 10:00 AM.)

2                          - - -

3                  C E R T I F I C A T E

4        I, Luke T. Lavin, RDR, CRR, the undersigned, certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7

8                          s/Luke T. Lavin
                           _____
9                          Luke T. Lavin
                           Official Court Reporter

10                         - - -

11              I N D E X   O F   W I T N E S S E S

12  WITNESS:                                      PAGE

13  GEORGE G. EARLS
    Examination by the Court ........................  10
14  Examination by Mr. Smith-Monahan ................  11
    Examination by Mr. Mangan .......................  12
15  Examination by Mr. Allen ........................  12
    Examination by Mr. Smith-Monahan ................  13
16  Examination by Mr. Allen ........................  15

17                         - - -

18

19

20

21

22

23

24

25