# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

            Plaintiff,      :      Case No. 1:15-cr-12
                                      Civil Case No. 1:17-cv-788

                                      District Judge Timothy S. Black
    -  vs  -                            Magistrate Judge Michael R. Merz

CHRISTOPHER LEE CORNELL,
nka Raheel Mahrus Ubaydah,

            Defendant.      :

## REPORT AND RECOMMENDATIONS

This criminal case is pending on a *pro se* Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 159). On June 6, 2024, Chief Judge Algenon Marbley referred that Motion to the undersigned along with ECF Nos. 170 (docketed as "Motion to Vacate"), 200 (docketed as "Amended Motion to Vacate"), and 210 (also docketed as "Amended Motion to Vacate.")(ECF No. 211). Also referred were "all prehearing and post-judgment motions and procedures, whether dispositive or not, relating to the Motions to Vacate and to render a report and recommendations to the Court on any matters classified as dispositive by statute or precedent." *Id.* The last-quoted language parallels the language in 28 U.S.C. § 636 which empowers Magistrate Judges to decide all non-dispositive motions with review by the assigned District Judge, but to recommend decisions on matters classified as dispositive either by statute or precedent.

1

The motions referred by the Chief Judge which are non-dispositive are decided in a Decision and Order filed June 10, 2024. Defendant's original Motion to Vacate (ECF No. 159) requires a report and recommendations from an assigned Magistrate Judge instead of a decision.

**Litigation History**[1]

Having been previously arrested on a Complaint and detained after initial appearance, Defendant was indicted by the grand jury for this District on January 21, 2015, and charged with attempting to kill employees and officers of the United States engaged in their official duties, in violation of 18 U.S.C. § 1114 (Count One); soliciting another to engage in conduct that violated § 1114, in violation of 18 U.S.C. § 373 (Count Two); and possession of a firearm in furtherance of an attempted crime of violence, in violation of 18 U.S.C. § 924(c)(Count Three)(Indictment, ECF No. 13). The next day Defendant was arraigned on these charges, pleaded not guilty, and had his case assigned to District Judge Sandra S. Beckwith (Minutes, ECF No. 15).

On May 7, 2015, the grand jury returned a Superseding Indictment which added a fourth count charging that Defendant "knowingly attempt[ed] to provide material support and resources, including personnel (specifically himself) and services, to a foreign terrorist organization, namely the Islamic State of Iraq and the Levant." (ECF No. 42, PageID 302).

On August 1, 2016, after Defendant had been examined and found competent to stand trial, he entered into a Plea Agreement with the United States in which he agreed to plead guilty to Counts 1, 3, and 4. (ECF No. 114, PageID 676). The parties agreed that the maximum sentence

---

[1] This recitation of the litigation history repeats verbatim the history in a contemporaneous Decision and Order denying many non-dispositive motions filed by Defendant (ECF No. 212). It is repeated here instead of being incorporated by reference for the convenience of the reader.

2

which could be imposed was 360 months. *Id.* at PageID 678. Defendant agreed he had received effective assistance from his appointed counsel; that his guilty plea was knowing, intelligent, and voluntary; that the facts in the attached Statement of Facts were true and provided an adequate factual basis for conviction; that his guilty plea was not induced by force, threats, or any promises other than those set forth in the Plea Agreement, and that he waived his right to appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. *Id.* at various pages.

On August 1, 2016, Judge Beckwith conducted the plea colloquy required by Fed. R. Crim. P. 11, accepted Defendants guilty pleas pursuant to the Plea Agreement, and referred the case to the Probation Department. After reviewing the Probation Report and noting that no objections had been made, she sentenced Defendant to 240 months imprisonment on Count 1; 180 months imprisonment on Count 4 with the first 120 months to run concurrent to Count 1, and 60 months to run consecutive to Count 1; 60 months imprisonment on Count 3 to be served consecutive to Counts 1 & 4, followed by a lifetime of supervised release (Minute Entry, ECF No. 130).

On December 6, 2016, the next day after sentencing and despite his promise not to do so, Defendant appealed (Notice of Appeal, ECF No. 133). The Sixth Circuit, however, enforced the appeal waiver and dismissed the case. *United States v. Cornell,* Case No. 16-4725 (6th Cir. May 10, 2017)(unpublished; copy at ECF No. 156). Defendant did not seek review by the Supreme Court of the United States, but filed his Motion to Vacate on October 12, 2017[2] (ECF No. 159).

Defendant pleads the following grounds for relief:

**Ground One:** Council [sic] refused to pursue any legal defense.

---

[2] The Motion was docketed on November 20, 2017, but in a Declaration made under penalty of perjury in the Motion, Cornell declares he placed the Motion it the prison mailing system on October 12, 2017 (ECF No. 159, PageID 1509). He is entitled to that date as the date of filing. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

>   **Supporting Facts:** I had in many instances an opportunity to pursue entrap[ment] or incompetency to stand trial, but council [sic] did not want to.
>
>   **Ground Two:** Council's [sic] psychologist refused to diagnose my mental illness.
>
>   **Supporting Facts**: Council's [sic] psychologist refused to diagnose my mental illness though knowing I suffer mental illness.
>
>   **Ground Three:** I was entrapped by the F.B.I.
>
>   **Supporting Facts:** The F.B.I. provided the necessary means and opportunities for the terrorist plot and encouraged and enabled me through my mental illness.
>
>   **Ground Four:** I was mentally ill before, present, and after my arrest.
>
>   **Supporting Facts:** It is proven that since a kid and even up through my conviction that I suffered from mental illness. During the crime I was not in the right state of mind and medical records prove this.

(Motion to Vacate, ECF No. 159).

Under Rule 4 of the Rules Governing § 2255 Proceedings, a motion to vacate is assigned to the judge who is assigned to the case generally. By the time this first Motion to Vacate was filed, the case had been reassigned from Senior Judge Beckwith to District Judge Black (ECF No. 158). Judge Black has never entered an order for the Government to answer the Motion and the Government has therefore not filed anything in response to Defendant's many filings. Under Rule 5 of the Rules Governing § 2255 Proceedings, the Government is not required to make any filing unless ordered to do so and Judge Black has not entered such an order.

Upon initial review under Rule 4, the Court is to dismiss a motion to vacate "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving

party is not entitled to relief." Based on the preliminary review of those filings, the Magistrate Judge concludes Defendant is not entitled to relief for the reasons set forth below.

**Ground One: Ineffective Assistance of Trial Counsel for Failure to Pursue Incompetency and/or Entrapment**

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional

5

> assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

6

The allegation that counsel refused to pursue a finding of incompetency is flatly contradicted by the record. The record shows it was defense counsel who moved the Court for an evaluation of Defendant's competency to stand trial (ECF No. 58). At the hearing to determine competency, defense counsel submitted an expert report on that question from Dr. Scott Bressler. Based on the evidence presented, Judge Beckwith found Defendant competent to stand trial (ECF No. 102) and the case proceeded on that basis. When the plea colloquy occurred, defense counsel stated they had no reason to believe Defendant was incompetent and Defendant himself claimed under oath he had never been treated for mental illness (Transcript, ECF No. 150, PageID 1312).

From the many filings he has made in which he claims mental illness, Defendant may believe that incompetency is a defense to the charges brought against him in this case. Not so. The effect of a finding of incompetence is commitment for treatment in custody to restore to competency. If a defendant cannot be restored to competency, he will be involuntarily committed for treatment. In contrast, if Defendant is alleging he is not guilty by reason of insanity, a claim he has not heretofore made in these proceedings, he should understand the effect of such a finding is also involuntary commitment, not release. John Hinckley, the man who attempted to assassinate President Reagan, was involuntarily committed upon a finding that he was not guilty by reason of insanity and was confined for more than forty years.

Defendant also asserts his counsel were ineffective for failure to pursue a defense of entrapment. The defense of entrapment is Congressionally created and requires proof that the defendant did not have a predisposition to commit the offense. *United States v. Russell,* 411 U.S. 423 (1973). There is no "objective" entrapment defense based in the Due Process Clause which requires dismissal based on "outrageous" government conduct. *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994). Defendant has presented no evidence that the FBI "planted" the idea of aiding

7

ISIL in his head or any other evidence suggesting an entrapment defense would have been successful. The two attorneys who represented Defendant in this case have excellent reputations for vigorous criminal defense representation. That they chose strategically not to pursue an entrapment defense does not show deficient performance on their part when such a defense is so difficult to prove.

Defendant's First Ground for Relief is without merit and should be dismissed.

**Ground Two: Refusal of Defense Expert to Diagnose Mental Illness**

In his Second Ground for Relief, Defendant alleges his expert psychiatric witness refused to diagnose him with mental illness although he knew Defendant was mentally ill.

Ground Two fails to state a claim upon which habeas corpus relief can be granted.

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Nichols v. United States,* 563 F.3d 240, 250 (6th Cir. 2009). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C.

§ 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991).

There is no constitutional right to a diagnosis from an expert witness that the examined person believes would be correct. Not only is there no such constitutional right, but such a diagnosis would be contrary to Defendant's sworn statement during the plea colloquy that he was not mentally ill (ECF No. 150, PageID 1312). On that basis, Ground Two should be dismissed.

**Ground Three: Entrapment by the F.B.I.**

In his Third Ground for Relief, Defendant asserts he was entrapped into the crimes he committed by the F.B.I.

Entrapment is an affirmative defense as to which the burden of proof is on the defendant at trial. During the plea colloquy Judge Beckwith thoroughly explained to Defendant that by pleading guilty he would be giving up his right to a trial. It is simply not the case that the facts already of record show entrapment. Before Defendant would have the opportunity to prove entrapment, he would have to have his guilty plea set aside, but he did not attack the plea on direct appeal and is therefore bound by Judge Beckwith's finding that the plea was knowing, intelligent, and voluntary. In sum, Defendant's plea of entrapment is barred by his guilty pleas and his Third Ground for Relief should therefore be dismissed.

**Ground Four:  Mental Illness**

In his Fourth Ground for Relief, Defendant asserts his conviction should be set aside because he is and has been since youth mentally ill.

Mental illness is not a bar to a criminal conviction.  As pointed out under Ground One above, a criminal defendant can plead that he is insane and therefore not guilty by reason of insanity.  But Defendant does not seek a finding to that effect and as with the entrapment defense he would have to have his guilty plea set aside before attempting to prove he was NGRI.  As with Ground Three, Judge Beckwith's finding that the plea was knowing, intelligent, and voluntary – which was not attacked on direct appeal – stands in the way.  The burden is even heavier here because during the plea colloquy he stated he had not been treated for mental illness (Transcript, ECF No. 150, PageID 1312).

Because "mental illness" is not a defense and because Defendant has waived any opportunity to present evidence of his mental state by pleading guilty, Ground Four should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Motion to Vacate (ECF No. 159) be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 10, 2024.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*<br>
United States Magistrate Judge