# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:15-cr-12 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| CHRISTOPHER CORNELL, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

This criminal case is before the Court on Defendant's *pro se* motions for compassionate release. (Docs. 205, 207, 209).[1]

## I. BACKGROUND

On January 21, 205, Defendant Christopher Cornell was charged by way of a three-count federal Indictment. (Doc. 13). On May 7, 2015, a Superseding Indictment was filed, to add one additional charge. (Doc. 42). Specifically, the Superseding Indictment charged Defendant as follows: attempted murder of government officials and employees, in violation of 18 U.S.C. § 1114 (Count 1); solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373 (Count 2); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 3); and attempted material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B

---

[1] Prior to Defendant filing his first *pro se* motion for compassionate release, Defendant was assigned appointed counsel for an unrelated review. (Docs. 204, 205). Regardless, appointed counsel filed a notice as to the compassionate release motion as well, noting that he did not intend to supplement the motion due to Defendant's wish to proceed *pro se*. (Doc. 208).

(Count 4). (Doc. 42). As charged, Defendant was subject to a maximum term of 20 years imprisonment as to Counts 1 and 2, a mandatory minimum term of five years up to life imprisonment on Count 3, and a maximum term of 15 years imprisonment on Count 4. 18 U.S.C. §§ 1113, 1114; 18 U.S.C. § 373; 18 U.S.C. § 924(c); 18 U.S.C. § 2339B.

On August 1, 2016, Defendant appeared before the Court and entered pleas of guilty to Counts 1, 3, and 4 of the Superseding Indictment, pursuant to a Rule 11(c)(1)(C) plea agreement, in which the parties proposed maximum sentence of 360 months imprisonment. (Docs. 114, 150). The plea agreement also included certain non-binding Guideline stipulations of the parties. (Doc. 114). The Court accepted Defendant's guilty plea, but deferred acceptance of the Rule 11(c)(1)(C) plea agreement until after the Court received and reviewed the PSR. (Doc. 150 at 32:4-13).

At part of his plea agreement, Defendant admitted to the facts set forth in his Statement of Facts. (Doc. 114 at 9-10; Doc. 150 at 26-30). In sum, Defendant admitted that he plotted and planned to conduct a violent attack within the United States in support of the Islamic State of Iraq and the Levant (ISIL), a foreign terrorist organization. (Doc. 114 at 9-10). Defendant admitted he knowingly attempted to provide material support and resources to ISIL. (*Id.*) Defendant admitted that he planned to travel to Washington, D.C. to attack the U.S. Capitol and kill officers and employees of the United States government during the 2015 State of the Union Address. (*Id.*) Defendant also admitted to conducting online research related to weapons, the construction of bombs, and the U.S. Capitol and other Washington, D.C. area targets. (*Id.*) Defendant admitted to purchasing two M-15 semi-automatic rifles and 600 rounds of ammunition, in furtherance

of his crimes of violence. (*Id.*) Finally, Defendant admitted that, even following his arrest, while in pretrial detention, he continued to post statements online calling for, and attempting to recruit others to join him in, "violent jihad against the United States and its citizens on behalf of ISIL…." (*Id*. at 10). Defendant also posted identifying information regarding a person Defendant believed to be the Government's Confidential Source and witness against him, which information included the person's address, physical description, and descriptions of the person's family members. (*Id*.)

Defendant's final PSR was completed on October 25, 2016. As stated in the PSR and ultimately calculated by the Court, Defendant's offense conduct resulted in a Total Offense Level of 43, a Criminal History Category VI, and a Guideline sentence of 420 months imprisonment as to Counts 1 and 4, as well as 60 months, consecutive to all other counts, as to Count 3. (PSR at 13, 14, 27).[2]

On December 5, 2016, Defendant was sentenced to 240 months imprisonment on Count 1; 180 months imprisonment on Count 4, partially concurrent to Count 1, such that the first 120 months runs concurrent to Count 1 and the remaining 60 months runs consecutive; and 60 months imprisonment on Count 3, to be served consecutive to

---

[2] As calculated, Defendant's Offense Level computation resulted in a score of 50. (PSR at 13). However, as 43 is the maximum score available under the Guidelines, his Total Offense Level was reduced to 43. (*Id.*); USSG Ch. 5, Pt. A, n.2. Additionally, a Total Offense Level 43 and Criminal History Category VI results in a Guideline range of life imprisonment. However, a life sentence would exceed the statutory maximum for Counts 1 and 4. Therefore, pursuant to the Guidelines, Defendant's range was reduced to 420 months (*i.e.*, Count 1's statutory maximum of 240 months, plus Count 4's statutory maximum of 180 months). USSG § 5G1.2(b). Finally, while Count 3 carries statutory maximum life sentence, the Guidelines instruct that the range for 18 U.S.C. § 924(c) offenses shall be the mandatory minimum. USSG § 5G1.2(a), n.2.

3

Counts 1 and 4; resulting in an aggregate term of 360 months imprisonment, followed by a lifetime of supervised release. (Doc. 131 at 3; Doc. 151 at 123-25).

## II. STANDARD OF REVIEW

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment," and "the court may not modify a term of imprisonment once it has been imposed," subject to limited exceptions. 18 U.S.C. § 3582(b), (c); *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such exception permits the Court to reduce a term of imprisonment, either upon a motion brought by the Bureau of Prisons ("BOP"), or on the defendant's own motion, seeking compassionate release. *Id*. at § 3582(c)(1)(A)(i). A defendant may file a motion for compassionate release with the Court after exhausting the BOP's administrative process, or thirty days after the warden receives the defendant's compassionate release request, whichever is earlier. *Id*. at § 3582(c)(1)(A).

To grant a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must: **first**, find that "extraordinary and compelling reasons warrant [] reduction [of the sentence]"; **second**, find that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission" (specifically, U.S.S.G. § 1B1.13); and **third**, consider the applicable 18 U.S.C. § 3553(a) factors. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).

However, pursuant to Sixth Circuit precedent, the second step of the Court's three-step § 3582(c)(1)(A) inquiry—*i.e.*, finding that the reduction is consistent with U.S.S.G. § 1B1.13—does **not** apply to motions brought by the *defendant*. *Jones*, 980 F.3d at 1109

4

(citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)); *Elias*, 984 F.3d at 519 (noting the Sixth Circuit's holding is consistent with the Second, Fourth, and Seventh Circuits, as well as the majority of district courts).

"The district court has substantial discretion" in deciding a motion for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("The statute says that the district court 'may' reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so").

Defendant bears the burden of showing that he is entitled to compassionate release. *E.g.*, *United States v. Kannell*, No. 20-12635, 2021 WL 223485, at *1 (11th Cir. Jan. 22, 2021) ("The movant bears the burden of proving entitlement to relief under section 3582"); *United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020) ("[the defendant] did not meet his burden of demonstrating that his circumstances were extraordinary and compelling"); *cf. United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (holding that the defendant bears the burden to show he is entitled to reduction of sentence under 18 U.S.C. § 3582(c)(2)).

### III.  ANALYSIS

Here, Defendant has filed his own motion for compassionate release and, therefore, the Court must undertake the first and third steps of the § 3582(c)(1)(A) inquiry. Accordingly, the Court will consider whether "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence and, if so, will further consider whether such a reduction is warranted in light of the relevant section 3553(a) factors.

### A. Extraordinary and Compelling Circumstances

First, the Court must find that "extraordinary and compelling reasons warrant [the sentencing] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute does not define the term "extraordinary and compelling reasons," and Congress delegated the task to United States Sentencing Commission. *See Ruffin*, 978 F.3d at 1004. However, "[i]n cases where incarcerated persons file motions for compassionate release, <u>federal judges … have full discretion to define 'extraordinary and compelling'</u> without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111 (emphasis added).

Defendant argues that the presence of COVID-19, coupled with his underlying medical conditions, constitute extraordinary and compelling reasons. (Doc. 205, 207, 209). Defendant states that he suffers from granulomatous dermatitis, and claims that he suffers from an autoimmune disorder. (Doc. 205 at 1; Doc. 207 at 1, 3; Doc. 209 at 2-3).

The Sixth Circuit has held that, <u>absent extenuating circumstances</u>, the COVID-19 pandemic does not constitute an extraordinary and compelling reason for an inmate's release because COVID-19 vaccinations are available to federal prisoners. *See, e.g.*, *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (following *Lemons*).[3]

Here, Defendant's medical conditions do not constitute an extraordinary and compelling reason for a reduction in sentence. To start, Defendant's granulomatous

---

[3] For example, extenuating circumstances may include the inability to receive or benefit from a vaccine. *Lemons*, 15 F.4th at 751.

6

dermatitis is not a medical condition among the underlying conditions that the Centers for Disease Control and Prevention ("the CDC") identifies as causing an increased risk of severe illness from COVID-19. *People with Certain Medical Conditions*, CDC, a*vailable at*: www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 15, 2023). And although the CDC does include immunocompromised conditions as increasing a person's risk of complications from COVID-19, Defendant provides no records of any purported autoimmune disorder. *Id.*; *see Elias*, 984 F.3d at 520 (noting that district court could deny motion for compassionate release on sole basis that Defendant failed to provide medical records to support her claimed medical condition).[4]

As a final matter, COVID-19 is well-controlled at Defendant's current facility of designation—FCI Cumberland. As of June 28, 2024, there were no active COVID-19 cases in the facility, nor any COVID-related deaths reported. *Inmate COVID-19 Data*, BOP, *available at* www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed Jun. 26, 2024).

---

[4] To be clear, Defendant provides a single medical record dated March 20, 2019, which record indicates that in December 2018, Defendant was evaluated for a skin lesion that was "biopsied and determined to be consistent with Granulomatous dermatitis." (Doc. 207 at 3). Defendant was told the "skin condition is benign but *may* be associated with some autoimmune disorder …." (*Id.*) (Emphasis added). He was advised to use hydrocortisone cream for his skin and was also referred for lab work to test for any autoimmune disorders. (*Id.*) The notes from his appointment in March 2019 indicate that Defendant had not used the topical cream as recommended and that he had refused the lab work but "now consents to testing as previously advised." (*Id.*) Defendant offers no follow-up records indicating whether any such testing was done and, if so, what the results indicated.

7

In short, even accounting for Defendant's medical condition, the mere possibility that Defendant may contract COVID-19 and develop serious complications does not give rise to extenuating circumstances to justify the extraordinary remedy of compassionate release.

### B. 18 U.S.C. § 3553(a) Factors

If the Court finds that "extraordinary and compelling reasons" warrant reduction of the sentence, the Court must still "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [the prior step(s)] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *United States v. Dillon*, 560 U.S. 817, 827 (2010)).

Here, the Court did not find that "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence. And the Court may deny the motion on that finding alone. *See Elias*, 984 F.3d at 519 ("[D]istrict courts may deny compassionate-release motions when any of the [required] prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others") (citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006). However, even assuming *arguendo* that "extraordinary and compelling reasons" existed, the Court nevertheless finds that reduction is not warranted based upon its consideration of all applicable § 3553(a) factors.

Specifically, "the nature and circumstances" of Defendant's offense weigh heavily against release. 18 U.S.C. § 3553(a)(1). Defendant intended and took active steps to commit mass murder against government employees in the United States Capitol during the President's Annual State of the Union Address, all in support of a terrorist

organization—ISIL. Defendant purchased two semi-automatic rifles and approximately 600 rounds of ammunition, researched methods to construct bombs, and was departing on a reconnaissance trip to Washington, D.C. at the time of his arrest. Defendant also repeatedly expressed admiration for ISIL terrorists and actively sought to recruit others to join him in violent jihad against the United States and its citizens. And, indeed, he continued to espouse his views and seek recruits, even after his arrest, while in pretrial detention. Most disturbing of all was Defendant's conduct in bypassing the jail's internet restrictions, in order to not only post jihadist messages online but to <u>identify a person he believed to be a Confidential Source, as well as the person's family members</u>. Thus, the nature and circumstances of the offense weigh against release.

With regard to Defendant's history and characteristics, the Court acknowledges that Defendant had no criminal history beyond two juvenile convictions for domestic violence. 18 U.S.C. § 3553(a)(1). The Court further acknowledges that Defendant suffers from mental health issues.

Finally, the Court must consider the goals of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, protecting the public, and deterring Defendant from future criminal conduct. 18 U.S.C. § 3553(a)(2). In this regard, the Court finds, unequivocally, that Defendant's release would undermine each of these sentencing goals. Most notably, the Court reiterates that Defendant not only intended to commit violent acts of terrorism, but he took active steps towards his goals, he sought others to join him, and <u>even after he was arrested</u>, he found ways to thwart the system in order to publicly espouse his views and to identify a possible Confidential

Source and that person's family.  Nothing about Defendant's conduct pre- and post-arrest gives this Court comfort that Defendant's custodial sentence thus far is sufficient to satisfy the purposes of sentencing.  18 U.S.C. § 3553(a)(2).

At the time of sentencing, upon thorough consideration of all applicable 18 U.S.C. § 3553(a) factors, the Hon. Sandra S. Beckwith sentenced Defendant to an aggregate term of 360 months imprisonment.  To date, Defendant has served approximately 114 months.  For purposes of Defendant's motion, the Court has once again considered all applicable 18 U.S.C. § 3553(a) factors and, having done so, finds that the imposed sentence is wholly appropriate.  In short, the Court finds that the imposed sentence of 360 months imprisonment is sufficient but not greater than necessary, and further finds that any reduction of Defendant's sentence would fail to fully address the purposes of sentencing.

## IV.  CONCLUSION

Based upon the foregoing, Defendant's motions for compassionate release (Docs. 205, 207, 209) are **DENIED**.

**IT IS SO ORDERED.**

Date:  6/28/2024　　　　　　　　　　　　　　　　　　　*s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge